# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

RAYFIELD L. BARNEMAN,

       Plaintiff,

   v.

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, LOCAL 1423; SSA
COOPER, LLC; MARINE TERMINAL
CORPORATION-EAST; ATLANTIC RO-RO
STEVEDORING, LLC; APS
STEVEDORING LLC; and GEORGIA
STEVEDORING ASSOCIATION,

       Defendants.

CIVIL ACTION NO. 2:17-cv-00051

## <u>O R D E R</u>

This action concerns the enforcement of a "no personal items" policy, pursuant to which

Plaintiff Rayfield L. Barneman was prohibited from bringing a seat cushion with him into

automobiles that he had to drive while he was working at the Port of Brunswick. (<u>See</u> Doc. 5.)[1]

---

[1] Plaintiff initiated this case *pro se* by filing an original Complaint and then, nineteen days later and prior to serving any of the Defendants, filing an Amended Complaint. (Docs. 1, 5.) Several months later he retained his present legal counsel, who then filed what purports to be a "Second Amended Complaint," (doc. 16). Notwithstanding the fact that, per Fed. R. Civ. P. 15(a)(2), an amendment to a complaint in this context is permitted "only with the opposing party's written consent or the court's leave," Plaintiff never sought leave from the Court and has not indicated that written consent was obtained from the opposing parties. The "Second Amended Complaint" is further deficient because, other than introductory language, it is comprised exclusively of four numbered paragraphs that Plaintiff states he is thereby "add[ing]" to the Amended Complaint. (<u>Id.</u>) Given the assertion that Plaintiff wishes to "add" to the Amended Complaint and in light of the lack of critical pleadings (such as the basis of this Court's jurisdiction) in the "Second Amended Complaint," the Court deems this to have been intended as a *supplemental* complaint rather than an *amended* complaint. <u>See</u> Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."); <u>see also</u>, <u>Lowery v. Ala. Power Co.</u>, 483 F.3d 1184, 1187 (11th Cir. 2007) ("[A]n amended complaint supersedes the initial complaint and becomes the operative pleading in the case."). Put another way, even assuming Plaintiff had obtained the necessary

Plaintiff filed his Amended Complaint on May 22, 2017, alleging that, as a result of the policy, he was discriminated against because of his disability and age in violation of the Americans with Disabilities Act ("ADA")[2] and the Age Discrimination in Employment Act of 1967 ("ADEA"), respectively. (Id. at p. 5.) In support of his ADA claim, Plaintiff asserts that Defendants failed to provide him with a reasonable accommodation for his medical condition because they did not permit him to keep his seat cushion with him while he was on the job.[3] (Doc. 73, pp. 3–5.) For

---

consent or leave to file this document as an *amended* complaint, it would have become the operative pleading in this case and would divest the Court of jurisdiction and void Plaintiff's prior allegations, an outcome the Court assumes was not intended by Plaintiff or his counsel. Plaintiff's proposed Second Amended Complaint supplements the existing Complaint by adding allegations (and exhibits) concerning the proceedings before the EEOC, which took place after his original Complaint and Amended Complaint were filed. None of the Defendants have objected to the filing of these new allegations and exhibits, and in fact some Defendants have referenced them in their Motions and other filings. (See, e.g., Doc. 71-15, p. 9.) Accordingly, the Court will treat Plaintiff's "Second Amended Complaint," (doc. 16), as a supplemental pleading to his Amended Complaint, (doc. 5), and the Court will continue to refer to the Amended Complaint, (id.), as the operative pleading in the case.

[2] The heading for Count I of Plaintiff's Amended Complaint purports to allege a violation of "Title VII." (Doc. 5, p. 5.) The allegations within that Count refer repeatedly to "Title VII, the Americans with Disabilities Act." Plaintiff seems to be improperly conflating two separate statutory schemes. Title VII of the 1964 Civil Rights Act applies to discrimination based on an "individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), while the ADA applies to discrimination on the basis of an individual's disability, 42 U.S.C. §§ 12111, et seq. Since the paragraphs within Count I allege facts relating to a claim of discrimination based on disability and do not include any allegations to support a claim of discrimination based on race, color, religion, sex, or national origin, and given that Plaintiff was *pro se* at the time he filed the Amended Complaint, the Court construes Count I as seeking to assert a violation of the ADA. In doing so, the Court abides by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). Additionally, "federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." Retic v. United States, 215 F. App'x 962, 964 (11th Cir. 2007) (quoting Castro v. United States, 540 U.S. 375, 381 (2003)). The Court "may do so in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis." Id. (quoting Castro, 540 U.S. at 381–82).

[3] In his Amended Complaint, Plaintiff states that he suffers pain and degradation of "peripheral neuropathy." (Doc. 5, p. 2.)

his ADEA claim, Plaintiff identifies one younger employee who he claims was allowed "to carry his back pack" into vehicles without being terminated. (Doc. 5, p. 5.)

Presently before the Court is Defendant International Longshoremen's Association, Local 1423's (the "Union") Motion for Summary Judgment, (doc. 69), and Defendants Atlantic Ro-Ro Stevedoring, Inc. ("Atlantic Ro-Ro"), APS Stevedoring, LLC ("APS"), Marine Terminals Corporation-East ("Marine Terminals") (collectively, the "Port Employers"), and the Georgia Stevedore Association, Inc.'s ("GSA") Motion for Summary Judgment, (doc. 71). Plaintiff filed a Response to these Motions, (doc. 73), and Defendants thereafter filed Replies, (docs. 77, 78). Given the similarity of the issues and claims, the Court addresses the two Motions for Summary Judgment concurrently. The Court finds that the evidence presented by Plaintiff in this case is not enough for a reasonable jury to find that Defendants intentionally discriminated against him on the basis of disability or age. Thus, the Court **GRANTS** Defendants' Motions for Summary Judgment. (Docs. 69, 71.)

## BACKGROUND[4]

---

[4] Plaintiff fails to provide citations to support most of the factual assertions in his Response Brief or in his Responses to Defendants' Rule 56.1 Statements. (Docs. 73, 73-1, 73-2.) In addition, even when Plaintiff does reference the record, he does so in a very general fashion, such as stating "See the entire transcript" or "See the deposition of Essie Kitchen." (See, e.g., Doc. 73-1, pp. 2–3.) Southern District of Georgia Local Rule 56.1 requires that "[e]ach statement of material fact [in support of a motion for summary judgment] shall be supported by a citation to the record." This requirement "protects judicial resources by making the parties organize the evidence rather than leaving the burden upon the district judge." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008) (internal quotation and citation omitted) (referring to an analogous local rule from the Northern District of Georgia); see also Nw. Nat'l Ins. Co. v. Baltes, 15 F.3d 660, 662–63 (7th Cir. 1994) ("District judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the burden on the litigants, but also because their time is scarce."); Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) ("Given the vital purpose of [local rules requiring record citations], litigants ignore them at their peril.") The Eleventh Circuit Court of Appeals has held a district court should "disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement." Reese, 15 F.3d at 1268. Therefore, the Court deems the Defendants' material facts admitted where Plaintiff provides no citation to properly dispute them. Where the Plaintiff has at least referenced an exhibit that he believes contains facts to support a material

Plaintiff is a sixty-eight-year-old male, (doc. 69-2, p. 1), and has worked on and off as a longshoreman at the Port of Brunswick in Georgia since 1971, (doc. 78-1, p. 5). Plaintiff is a member of the Union, the recognized collective bargaining agent for longshoremen at the Port. (Doc. 69-2, p. 1.) Several stevedoring companies operate in Brunswick, including Defendants Atlantic Ro-Ro, APS, and Marine Terminals. (Doc. 71-16, p. 2.) Plaintiff has worked for each of the Port Employers at some point during his career as a longshoreman. (Doc. 69-2, p. 2.) The Port Employers are members of GSA, which is an association that acts as a representative for the Port Employers in negotiating collective bargaining agreements with the Union. (Id.; doc. 71-6, p. 2.) To handle grievances filed by or against Union members, the Union and the Port Employers have created a joint labor-management Port grievance committee ("the PGC"), which is made up of representatives from the Union and the Port Employers, as well as a non-voting representative from GSA. (Doc. 71-6, p. 5; doc. 69-2, p. 4.)

Longshoremen workers are available for hire by Port Employers through the Union's hiring hall. (Doc. 69-2, pp. 2–3; doc. 71-6, pp. 2–3.) The Port Employers first hire individuals to work as "headers" and "field foremen," and these individuals, in turn, hire the longshoremen for the specific job. (Doc. 69-2, p. 3.) When a Port Employer hires a worker, that Port Employer pays the worker for that day's work. (Doc. 71-16, p. 3.) One of the jobs longshoremen perform at the Port is driving new automobiles back and forth between vessels and a storage area. (Id.) Once a vehicle arrives at the correct area, shuttle vans transport the longshoremen back to the vessel or the storage area to repeat the process. (Doc. 69-2, p. 3.) These shuttle vans have hard seats that lack padding to cushion riders against bumps on the road. (Id.; doc. 78-1, p. 12.)

---

dispute, the Court has reviewed that document to at least attempt to determine whether there is factual support for Plaintiff's assertions. See Fils v. City of Aventura, 647 F.3d 1272, 1282 (11th Cir. 2011) (noting that the district court has discretion in determining how strictly to interpret its local rules). The Court instructs Plaintiff's counsel to comply with the Court's Local Rules in the future.

Due to a bulging disc, Plaintiff suffers from a chronic back condition which is aggravated by sitting on hard surfaces like the van seats. (Doc. 78-1, p. 16; see also doc. 1-3.) Plaintiff would often bring a seat cushion with him to work at the Port and would carry it with him (into both the new automobiles and the shuttle vans) to help ease his back pain when he had to sit. (Doc. 5, p. 2.) A longstanding policy prohibited longshoremen from taking personal items into the automobiles they transported. (Doc. 71-16, p. 4.) After receiving a complaint from a car manufacturer about personal items being left in the vehicles, the president of GSA issued a memo reiterating the policy. (Id. at pp. 3–4.) The president of the Union then posted a copy of the memo in the hiring hall. (Doc. 69-2, p. 4.) On April 9, 2016, Essie Kitchen, a header, fired Plaintiff for the remainder of the workday because he tried to bring a cushion into a vehicle in violation of the policy. (Doc. 71-16, p. 4.) Prior to his dismissal on April 9, Plaintiff had never asked the Port Employers or the Union to make any sort of accommodation for his back condition.[5] (Doc. 69-2, p. 4.)

Plaintiff alleges that another longshoreman, Oscar Brown, was treated differently with regard to personal items. (Doc. 73, p. 6.) Brown is under the age of 40 and is a type I diabetic. (Doc. 69-2, p. 7; doc. 71-2, p. 4.) Plaintiff says that Brown was permitted to carry a backpack containing his diabetic supplies with him into vehicles until October 30, 2016 despite the "no

---

[5] In an affidavit attached to his Response Brief, Plaintiff asserts that he told the Union's business agent and another Union officer about his need for an accommodation before April 9, 2016. (Doc. 73-3, p. 3.) This statement is directly at odds with Plaintiff's deposition where he said that his termination on April 9, 2016 took place *before* he made any accommodation requests. (Doc. 78-1, p. 29.) Because his affidavit directly contradicts prior testimony from his deposition, and no satisfactory explanation for the change in testimony has been provided, the Court will not consider this later testimony. See Van T. Junkins and Assocs. Inc. v. U.S. Indus. Inc., 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

personal items" policy.[6]  (Doc. 73-3, p. 4; doc. 73, p. 6.)  Brown, however, testified in a deposition that he was not allowed to bring his backpack into the vehicles and started carrying his supplies in a vest instead.  (Doc. 71-2, pp. 5–6.)

In May 2016, Plaintiff filed a grievance with the PGC concerning his April 9 termination. (Doc. 71-16, p. 5.)  In late June 2016, before his PGC hearing, Plaintiff sent a letter to the Union, GSA, and the Port Employers requesting that he be allowed to "carry his seat cushion" with him while on duty.  (Doc. 69-2, p. 5.)  Attached to the letter were two doctors' notes dated April 18, 2016 and April 20, 2016 supporting his request.  (Id.)  When the PGC heard Plaintiff's grievance on July 21, 2016, they told him that he could not bring a cushion with him into new automobiles, but he could bring *multiple* cushions to the Port and place one in each shuttle van so that a cushion would be available for his use in any van  (and he would not delay his work by having to wait for the one van that had his cushion in it).  (Doc. 69-3, pp. 53–55.)  In addition, at some point thereafter, Plaintiff was also informed that he could wear cushioning or padding on the inside of his clothes. (Doc. 69-2, p. 5.)  He concedes that both options complied with his doctors' notes.  (Doc. 69-3, p. 21.)  He also acknowledges that, following the PGC hearing, he thought he had received a reasonable accommodation.  (Id.)

Later, on August 16, 2016, two Union officials spoke with Plaintiff about shirking work when he was observed waiting for a specific shuttle (rather than boarding the first available one). (Doc. 69-2, p. 6.)  Notably, Plaintiff was not fired that day.  (Id.)  He did, however, file another grievance with the PGC, alleging that the two Union officials used threatening and abusive language toward him.  (Id.)  Before a PGC hearing on that grievance took place, Plaintiff was terminated on October 17, 2016 for the rest of his shift for Atlantic Ro-Ro because it was

---

[6] Terry O'Neal, the operations team leader for Atlantic Ro-Ro, testified that he had no knowledge that Brown had ever brought his backpack into vehicles.  (Doc. 71-10, pp. 3–4.)

determined that he was evading work by waiting for a specific van with his cushion in it. (Doc. 71-16, pp. 6–7.) Plaintiff then filed a grievance with the PGC contesting this termination. (Doc. 69-2, p. 6.)

On November 22, 2016, the PGC held a hearing for both the August 2016 and the October 2016 grievances. (Id.) The PGC reiterated to Plaintiff what had been communicated to him in the previous hearing—that he could place a cushion in each of the vans or wear cushions inside his clothes, but that he could not shirk work by waiting for a specific van with his cushion. (Id. at pp. 6–7.) Plaintiff began wearing clothes with cushioning sewn into it at work, and there is no evidence that he has since been terminated from a job. (Id. at p. 6.)

On October 28, 2016 (prior to his second PGC hearing), Plaintiff filed a charge against the Union and GSA with the Equal Employment Opportunity Commission. (Doc. 71-6, p. 7.) In it, he asserted that he had been fired on October 17, 2016 because of his age and disability. (Doc. 17, pp. 13–14.) He then obtained a right-to-sue notice. (Doc. 69-2, p. 7.) Plaintiff filed his Complaint initiating this action on May 3, 2017. (Doc. 1.) The Court now turns to the Defendants' Motions for Summary Judgment.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. (citation and emphasis omitted).

**DISCUSSION**

Plaintiff claims that the Defendants violated the ADA and ADEA by discriminating against him because of his disability and age, respectively.[7] (Doc. 5, p. 5.) The Port Employers, GSA and the Union all argue that Plaintiff cannot establish the *prima facie* elements of either claim. (Doc. 69-1, pp. 9, 13; doc. 71-15, pp. 11, 15.) In addition, Defendants state that Plaintiff's ADEA claim fails because they acted with a legitimate, non-discriminatory reason. (Doc. 69-1, pp. 18–19; doc. 71-15, pp. 16–17.) GSA also asserts that it does not qualify as an employer or labor organization under either the ADA or the ADEA. (Doc. 71-15, pp. 18–19.) Finally, the Port Employers claim they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies against them. (Id. at pp. 19–22.)

For the following reasons, the Court concludes that summary judgment is appropriate because Plaintiff fails to establish the *prima facie* elements of either claim and because the Defendants offer a legitimate, non-discriminatory reason for their actions. GSA is also entitled to summary judgment on the grounds that neither the ADA nor the ADEA is applicable to it. Having

---

[7] Count I of Plaintiff's Amended Complaint primarily asserts an ADA discrimination claim, but within this count there is also a reference to a hostile work environment. (Doc. 5, p. 5.) To the extent that Plaintiff seeks to bring a hostile work environment claim under the ADA, that claim fails. First, the Eleventh Circuit Court of Appeals has not decided whether a hostile work environment claim is even cognizable under the ADA. See, e.g., Cooper v. CLP Corp., 679 F. App'x 851, 853 n.2 (11th Cir. 2017) (noting that the Eleventh Circuit "had not yet addressed the issue"). Even assuming the claim is cognizable, it still fails because Plaintiff did not exhaust his administrative remedies for this claim. See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) (noting that to sue under Title VII a plaintiff must first exhaust administrative remedies); 42 U.S.C. § 12117(a) (applying Title VII's procedures to the ADA); Booth v. City of Roswell, 754 F. App'x 834, 836 (11th Cir. 2018) ("Before filing suit under the ADA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC."). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n.8 (11th Cir. 1994). Plaintiff's EEOC charge only asserts facts surrounding his October 17, 2016 termination which he attributes to age and disability discrimination. (Doc. 17, pp. 13–14.) Nothing in the charge describes facts related to a hostile work environment, nor does it provide dates when alleged harassment occurred. (Id.) Plaintiff admits that he failed to include any allegations of harassment in his EEOC complaint. (Doc. 78-1, pp. 26, 40.) Because Plaintiff's EEOC charge does not allege facts to support a hostile work environment claim, Plaintiff cannot bring this claim in federal court. See, e.g., Green v. Elixir Indus., Inc., 152 F. App'x 838, 840–41 (11th Cir. 2005) (holding that a plaintiff could not bring a hostile work environment claim because her EEOC complaint only alleged she was terminated due to her race).

determined that summary judgment is appropriate on these grounds, the Court need not address the Port Employers' "failure to exhaust" argument.

## I.      Disability Discrimination (Count I)

Plaintiff alleges that the Union, the Port Employers, and GSA violated the ADA when they failed to reasonably accommodate his disability.  (Doc. 73, pp. 3–5.)  All Defendants now move for summary judgment on this claim, arguing that Plaintiff was provided a reasonable accommodation once he requested one.  (Doc. 69-1, pp. 9–12; doc. 71-15, pp. 11–14.)  Because Plaintiff did not request an accommodation before his first termination and then received a reasonable one after making a request, the Court finds summary judgment is appropriate on this issue.

"The ADA was enacted to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities and to bring persons with disabilities into the economic and social mainstream of American life."  Harrison v. Benchmarks Elecs. Huntsville, Inc., 593 F.3d 1206, 1212 (11th Cir. 2010) (citation and internal quotation omitted).  The ADA provides that no covered entity (i.e., employer or labor organization) "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring . . . or discharge of employees, . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

Plaintiffs can establish a *prima facie* ADA case "using the familiar burden-shifting analysis employed in Title VII employment discrimination cases."  Wascura v. City of S. Miami, 257 F.3d 1238, 1242 (11th Cir. 2001).   To meet this burden, Plaintiff must prove three elements: "(1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability."  Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255–56 (11th Cir.

2007). "An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability—unless doing so would impose undue hardship on the employer." <u>Lucas v. W.W. Grainger, Inc.</u>, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing 42 U.S.C. § 12112(b)(5)(A) and 29 C.F.R. § 1630.9(a)). Satisfying the reasonable accommodation requirement does not require the employer "to accommodate an employee in any manner in which that employee desires." <u>Stewart v. Happy Herman's Cheshire Bridge, Inc.</u>, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation and internal quotation omitted). The accommodation must only "enable[] the employee to perform the essential functions of the job." <u>Holly</u>, 492 F.3d at 1256. Plaintiff has the burden to identify an accommodation and to demonstrate that it allows him to perform the job's essential functions. <u>Lucas</u>, 257 F.3d at 1255–56; <u>Rabb v. Sch. Bd. of Orange Cty.</u>, 590 F. App'x 849, 850 (11th Cir. 2014) (per curiam) ("The plaintiff bears the burden both to identify an accommodation and show that it is reasonable.").

Neither of Defendants' Motions for Summary Judgment disputes that Plaintiff had a disability or that he could sit on the van benches with a reasonable accommodation. (Doc. 69-1, pp. 9–12; doc. 71-5, pp. 11–14.) Instead, they assert that Plaintiff did not experience unlawful discrimination because they provided him with a reasonable accommodation. (<u>Id.</u>) Thus, as the claim can be decided on this third element, the Court will assume without deciding that Plaintiff is disabled and that sitting on the shuttle vans' seats was an essential function of Plaintiff's job.[8]

Plaintiff's Response argues that instead of accommodating his disability, Defendants decided that if he "had any disability, he should not attempt to work." (Doc. 73, p. 4.) A review

---

[8] Plaintiff provides no evidence that he needed to use a cushion for the seats in the vehicles that he drove on and off the vessels. In fact, Plaintiff admits that he did not use a cushion while driving a normal automobile. (Doc. 78-1, p. 6.) Thus, the evidence shows that Plaintiff only needed the cushion when he sat on the shuttle van seats.

of the record shows that Plaintiff was dismissed from work on April 9, 2016 for trying to bring a cushion into a vehicle (not a shuttle van) and on October 17, 2016 for waiting for a specific van in which he had left his cushion. (Doc. 71-16, pp. 4, 6.)[9] Plaintiff appears to claim that his termination on both dates demonstrates Defendants' failure to provide a reasonable accommodation for his disability. However, he admits that he had not requested an accommodation prior to the April 9, 2016 termination. (Doc. 78-1, p. 29.) "[T]he duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made . . . ." Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999). Thus, any ADA claim that Plaintiff asserts relating to his April 9 termination can be easily dismissed because none of the Defendants had an obligation to provide him a reasonable accommodation at that time.

Turning to the October 17 termination, all parties agree that Plaintiff informed the Defendants about his disability in June 2016 when he sent them a letter requesting permission "to carry his seat cushion" along with two doctors' notes detailing his back problems. (Doc. 69-2, p. 5; doc. 71-16, p. 5.) Thereafter, the PGC panel told Plaintiff that he could bring and leave a cushion in each shuttle van. (Doc. 69-2, p. 5.) By leaving a cushion in each one, Plaintiff would have padding for the van benches but would not violate the policy prohibiting employees from carrying personal items into the automobiles being transported on and off the shipping vessels. (Doc. 69-3, pp. 53–54.) In addition, at some point, he was given the option to wear cushions inside his clothing. (Doc. 69-2, p. 5.)

Plaintiff's Response states that the option to bring cushions for each of the vans was "unreasonable." (Doc. 73, p. 5.) However, he provides no explanation for why this

---

[9] Plaintiff's Amended Complaint also alleges he was terminated on August 16, 2016. (Doc. 5, p. 5.) However, it is now undisputed that Plaintiff was not terminated that day. (Doc. 69-2, p. 6.)

accommodation would not allow him to sit on the van benches. In fact, the evidence points to the opposite conclusion. Plaintiff admits that after meeting with the PGC panel, he thought he had received a reasonable accommodation. (Doc. 78-1, p. 21.) This option—along with the alternative of wearing cushions inside his clothes—also complied with his doctors' directions concerning his back. (Id.) Plaintiff concedes that he was fired on October 17, 2016 because he was waiting for a specific van with his cushion in it, (doc 69-2, p. 6), because he had not placed a cushion in each van as he was told he could do. Finally, Plaintiff started wearing pads under his clothes in October 2016, and since that time he has not been terminated from his job. (Id.) Taken as a whole, the evidence demonstrates that the provided accommodations allow Plaintiff to sit on the van benches despite his disability.

Plaintiff argues that he would prefer that Defendants "have the [van] seats padded so that [he] would not need to bring his own cushions" and he denies that padding his clothes is a reasonable option because it "is uncomfortable during most of the year." (Doc. 73, p. 4; doc. 73-3, p. 3). He also appears to assert that Defendants should have allowed him to carry a cushion into the vehicles that he drove on and off vessels. (Doc. 73. pp. 4–5.) While these options may be preferable to Plaintiff, the ADA does not require that he be provided the accommodation he finds most desirable. See Stewart, 117 F.3d at 1286 ("[U]nder the ADA a qualified individual with a disability is 'not entitled to the accommodation of her choice, but only to a reasonable accommodation.'") (citation omitted). Defendants provided Plaintiff with a reasonable accommodation that enabled him to sit on the van benches despite his disability, which is all that the ADA requires.

Moreover, even assuming, *arguendo*, that Plaintiff was entitled to his preferred accommodation, his ADA claim would still fail because he points to nothing in the record showing

he asked the Defendants to provide padding for the van seats. In fact, Plaintiff specifically admits that he never directly asked that pillows be purchased for him to use in the vans. (Doc. 78-1, p. 25.) As previously stated, "[t]he employee has the burden of identifying an accommodation and demonstrating that it is reasonable." Frazier-White v. Gee, 818 F.3d 1249, 1255 (11th Cir. 2016), *cert. denied* 137 S. Ct. 592 (2016). The request that Plaintiff did make was to carry his seat cushion with him during his shift for use on the van. (Doc. 69-2, p. 5; doc. 73-1, p. 3.) Defendants offered him two options that each reasonably and materially accommodated his request. While it may have been cheaper and more convenient for him to carry a single cushion with him throughout the duration of his work shift—including into the automobiles he was loading and off-loading— Plaintiff has not shown that this would have been reasonable especially given the fact that it would require him to violate the "no personal items" policy that had been enacted in response to the manufacturers' complaints.

The undisputed facts of this case show that Plaintiff did not request an accommodation until after his first termination on April 9, 2016. The Defendants responded to his request by providing him with two options that Plaintiff acknowledges complied with his doctors' notes and allowed him to work despite his disability. As a result, Plaintiff cannot show the third *prima facie* element: that he was subjected to unlawful discrimination because of his disability. The Court therefore **GRANTS** both Defendants' Motions for Summary Judgment as to Plaintiff's ADA discrimination claims. (Docs. 69, 71.)

## II.     Age Discrimination (Count II)

Plaintiff also claims that the Defendants are liable under the ADEA. (Doc. 5, p. 5.) All Defendants argue that summary judgment is appropriate as to this claim. (Doc. 69-1, p. 12; doc. 71-15, p. 14.) Under the ADEA, it is "unlawful for an employer to . . . discharge any individual

or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA also precludes a union from discriminating, or causing an employer to discriminate, against an individual based on the individual's age. 29 U.S.C. § 623(c). The Supreme Court has held that the "because of" language in the ADEA statute means that a plaintiff must show that age discrimination was the 'but-for' cause of the adverse employment action. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."). A plaintiff may "establish a claim of illegal age discrimination through either direct evidence or circumstantial evidence." Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1204 (11th Cir. 2010) (citation and internal quotation omitted). Here, it is undisputed that Plaintiff does not have direct evidence of intentional discrimination.[10] (Doc. 73, pp. 5–6.)

When no direct evidence of discrimination exists, a plaintiff must show circumstantial evidence of discrimination through the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[11] See Chapman v. AI Transp., 229 F.3d at 1024. Under McDonnell Douglas, a plaintiff must initially establish a *prima facie* case to create the presumption of age

---

[10] In their Motions, Defendants argue that Plaintiff has no evidence of discrimination. (Doc. 71-15, pp.14–18; doc. 69-1, pp. 12–19.) In his Response, Plaintiff does not dispute that he lacks evidence of direct discrimination, and instead focuses on establishing a *prima facie* case by arguing that the evidence "creates an inference that the reason why [he] was treated in a less favorable way was because of his age." (Doc. 73, pp. 5–7.)

[11] In the Gross opinion, the Supreme Court did not "definitively decide[]" whether the traditional McDonnell Douglas framework is still applicable in ADEA cases. See Gross, 557 U.S. at 175 n.2. The Eleventh Circuit Court of Appeals, however, has continued to apply the McDonnell Douglas analysis in ADEA cases post-Gross. See Sims v. MVM, Inc., 704 F.3d 1327, 1333 (11th Cir. 2013). Therefore, the Court will apply the traditional McDonnell Douglas standard to Plaintiff's ADEA claim here.

discrimination. <u>Liebman v. Metro. Life Ins. Co.</u>, 808 F.3d 1294, 1298 (11th Cir. 2015). If a plaintiff shows this, the employer then has the burden of production to articulate some "legitimate nondiscriminatory reason" for its action. <u>Clark v. Coats & Clark, Inc.</u>, 990 F.2d 1217, 1223 (11th Cir. 1993). Once the employer offers a justification, the plaintiff must show that the employer's proffered reason for its actions is pretextual and that the employer did in fact intend to discriminate. <u>Sims</u>, 704 F.3d at 1333.

In their Motions, Defendants make several arguments for why they should be granted summary judgment on Plaintiff's ADEA claim. First, Defendants argue that Plaintiff fails to show that age was the "but for" cause of his termination as required under <u>Gross</u>. (Doc. 69-1, pp. 12–13; doc. 71-15, pp. 17–18). They next assert that Plaintiff cannot establish a *prima facie* case of discrimination. (Doc. 71-15, pp. 14–15; doc. 69-1, p. 13.) Specifically, the Union argues that Plaintiff fails to establish both that it took adverse action against him and that he suffered disparate treatment because of his age, (doc. 69-1, pp. 14–18), while the Port Employers and GSA contend that Plaintiff cannot show he experienced disparate treatment, (doc. 71-15, pp. 15–16). Finally, all Defendants assert that even if Plaintiff could meet his initial burden, he cannot show that Defendants' proffered non-discriminatory reason for his termination—shirking work—was pretext for illegal discrimination. (Doc. 69-1, pp. 18–19; doc. 71-15, pp. 16–18.) The Court will address each of these arguments in turn.

### A.     Age as the "But For" Cause of Plaintiff's Alleged Disparate Treatment

As previously stated, the Supreme Court in <u>Gross</u> held that the ADEA does not authorize "a mixed-motives age discrimination claim." <u>Gross</u>, 557 U.S. at 175. Here, Plaintiff alleges that both age and disability discrimination motivated the Defendants' actions against him. (Doc. 5, p. 5.) Following the <u>Gross</u> decision, courts in this Circuit disagreed on whether the Supreme Court

had foreclosed a plaintiff's ability to simultaneously pursue claims under the ADEA and another anti-discrimination statute for the same employment decision.  Compare Culver v. Birmingham Bd. of Educ., 646 F. Supp. 2d 1272 (Mem.) (N.D. Ala. 2009) ("Prior to Gross, it was permissible to allege alternative proscribed employer motives, one of which is plaintiff's age.  That permission has now been withdrawn by the Supreme Court."), with McQueen v. Wells Fargo Home Mortg., 955 F. Supp. 2d 1256, 1284 (N.D. Ala. 2013) (emphasis in original) (holding that "under the ADEA, the plaintiff can allege that the alleged discriminatory acts were committed both because of her age and race").  The Eleventh Circuit has only examined this issue in an unpublished opinion, ruling that because Federal Rule of Civil Procedure 8(d) "expressly permits the pleading of alternative and inconsistent claims," plaintiffs are permitted to pursue ADEA claims along with other claims for unlawful discrimination that stem from the same conduct.  Savage v. Secure First Credit Union, No. 15-12704, 2016 WL 2997171, at *1 (11th Cir. May 25, 2016) (citation omitted).  However, this decision was at the motion to dismiss stage and not the summary judgment phase, and for that reason some district courts continue to hold that multiple "but for" employment discrimination claims may not proceed past summary judgment.  See, e.g., Jones v. Allstate Ins. Co., 281 F. Supp. 3d 1211, 1217 (N.D. Ala. 2016) ("[S]ummary judgment stands as a bulwark against multiple 'but-for' claims beyond even the broadest reading of Rule 8 alternative pleading.").  The Court need not resolve this issue today as Plaintiff's claim fails as a matter of law on other grounds.

**B.**      **Plaintiff's Claim against the Port Employers and GSA**

As a preliminary matter, it is undisputed that only Union officials spoke with Plaintiff on August 16, 2016 and that only Atlantic Ro-Ro employees fired Plaintiff on April 9, 2016 and October 17, 2016.  (Doc. 69-2, p. 6; doc. 78-1, pp. 46–47.)  The Plaintiff points to nothing, and the

Court finds nothing, in the record showing that Marine Terminals, APS, or GSA employed Plaintiff when any allegedly discriminatory acts occurred. Thus, the Court **GRANTS** Marine Terminals, APS, and GSA's Motion for Summary Judgment as to Plaintiff's ADEA claims against them.

The remaining Port Employer, Atlantic Ro-Ro, argues that Plaintiff cannot establish the *prima facie* elements of an ADEA claim against it. Under the <u>McDonnell Douglas</u> framework, a plaintiff must first establish a *prima facie* case of discrimination by showing that he was (1) a member of the protected age group, (2) subjected to an adverse employment action, (3) qualified to do the job, and (4) replaced by a younger individual or suffered disparate treatment compared to employees who were not members of his protected class. <u>Kelliher v. Veneman</u>, 313 F.3d 1270, 1275 (11th Cir. 2002) (deciding case brought under both Title VII and the ADEA); <u>Williams v. Vitro Servs. Corp.</u>, 144 F.3d 1438, 1441 (11th Cir. 1998). According to Atlantic Ro-Ro, Plaintiff cannot establish the fourth element of the *prima facie* case because he fails to show that the company treated him less favorably than someone outside of his protected class. (Doc. 71-15, p. 15.) Plaintiff responds by offering one comparator—Oscar Brown—whom Plaintiff alleges was permitted by the Port Employers to carry a personal backpack into vehicles. (Doc. 73-3, p. 4.)

The Eleventh Circuit Court of Appeals has recently held that "a plaintiff proceeding under <u>McDonnell Douglas</u> must show that she and her comparators are similarly situated in all material respects." <u>Lewis v. City of Union City</u>, 918 F.3d 1213, 1226 (11th Cir. 2019) (en banc) (internal quotation marks omitted). Under this standard,

> a similarly situated comparator will have engaged in the same basic conduct (or misconduct) as the plaintiff; will have been subject to the same employment policy, guideline, or rule as the plaintiff; will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff; and will share the plaintiff's employment or disciplinary history. In short, as its label indicates—"all material respects"—a valid comparison will not turn on formal labels, but rather on substantive likenesses. . . . [A] plaintiff and her comparators must be [so]

sufficiently similar, in an objective sense, that they cannot reasonably be distinguished.

Id. at 1227 (internal citations and quotation marks omitted).[12]

Viewing the record in the light most favorable to the moving party, the Court finds that Plaintiff cannot establish that Atlantic Ro-Ro treated members outside of his age protected class more favorably than him. It is undisputed that Atlantic Ro-Ro terminated Plaintiff from a job when he was observed waiting for a specific shuttle van carrying his seat cushion. (Doc. 69-2, p. 6.) Brown, like Plaintiff, is a member of the Union and works at the Port. (Doc. 71-2, p. 3.) However, unlike Plaintiff, he is under the age of forty. (Doc. 69-2, p. 7.) He is a type 1 diabetic who must always carry insulin. (Doc. 71-2, p. 4.) In his affidavit, Plaintiff states only very generally that Brown carried a backpack into vehicles. (Doc. 73-3, p. 4.) Plaintiff does not provide relevant dates or employers for which Brown was working when he carried his backpack into vehicles. Plaintiff asserts that Atlantic Ro-Ro allowed Brown to violate the "no personal items" policy, and that this "creates an inference that the reason why [he] was treated in a less favorable way [than Brown with regard to the policy] was because of his age." (Doc. 73, p. 6.) During his deposition, however, Brown explained that he was told that he could not carry his backpack into vehicles, and he denied the allegation that he carried a backpack into vehicles after being told that

_____

[12] Defendants' briefs utilize the "nearly identical" standard, as they were filed prior to the Eleventh Circuit's decision in Lewis. However, a new rule of law is generally retroactively applied to pending cases where there is no inequity in doing so. See Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 544 (11th Cir. 2002) (en banc). Moreover, the Eleventh Circuit applied its ruling in Lewis to the parties before it, 918 F.3d at 1229–31, and in several cases thereafter that were already pending on appeal. See Cornell v. Brennan, 775 F. App'x 630, 633 (11th Cir. 2019) (per curiam); McQueen v. Alabama Dep't of Transp., 769 F. App'x 816, 822 (11th Cir. 2019) (per curiam). As the new "similarly situated in all material respects" standard presents a lower threshold (and is thus easier for a plaintiff to satisfy) than the prior "nearly identical" standard, the parties' arguments in their briefs on this issue are applicable despite the change, and the Court sees no inequity in applying the new standard. Accordingly, the Court applies Lewis's "similarly situated in all material respects" standard to this case.

doing so violated the policy. (Doc. 71-2, pp. 5–6.) He says that, after he was told he could not bring his backpack, he started carrying his diabetic supplies in a vest that he wore. (Id.)

The fatal flaw to Plaintiff's claim is that he has not pointed to any evidence showing Atlantic Ro-Ro was *aware* Brown violated the policy and thereafter *allowed* him to continue to do so.[13] In fact, Atlantic Ro-Ro's Operations Team Leader testified that he had no knowledge of Brown ever having brought a backpack into the vehicles. (Doc. 71-10, p. 4.) Because Plaintiff fails to provide evidence that Atlantic Ro-Ro knew about Brown's alleged violations, Plaintiff cannot show that the company treated Brown differently than it treated Plaintiff with regard to the possession of personal items while on the job. See, e.g., Summers v. City of Dothan, 444 F. App'x 346, 348 (11th Cir. 2011) (per curiam) ("[P]roffered comparators' actions are only relevant if it is shown that the decision maker knew of the prior similar acts and did not discipline the rule violators."). Therefore, Plaintiff fails to make out a *prima facie* case, and his age discrimination claim fails.

---

[13] Plaintiff points to his own affidavit in which he states that the "Stevedoring company" witnessed Brown entering the vehicles with his backpack. (Doc. 73-3, pp. 4–5.) Defendants contend that this evidence is not admissible because it is not based on personal knowledge. (Doc. 78, pp. 10–11.) Federal Rule of Civil Procedure 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion . . . be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Statements in affidavits that are based upon information and belief are insufficient to defeat a motion for summary judgment. Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing Pace v. Capobianco, 283 F.3d 1275, 1278–79 (11th Cir. 2002)). In addition, an "affidavit should be clearly worded to indicate the specific circumstances in which [the affiant] obtained the personal knowledge about certain facts." Shaw v. Coosa Cty. Comm'n, 434 F. Supp. 2d 1196, 1198 (M.D. Ala. 2005). Plaintiff's affidavit provides no explanation for how he knew that the "Stevedoring company" had knowledge of Brown violating the policy. Furthermore, in his deposition, Plaintiff stated that it was his "assumption" that the Port Employers accommodated Brown by allowing him to take his personal item in the vehicles. (Doc. 78-1, p. 32.) When pressed about how he knew that the Port Employers treated Brown differently, Plaintiff agreed he did not know. (Id.) Finally, nowhere in Plaintiff's affidavit does he state that Atlantic Ro-Ro specifically knew about Brown taking items into vehicles. For all these reasons, the Court will not consider this statement from Plaintiff's affidavit as evidence.

Even if Plaintiff could establish a *prima facie* case of discrimination, however, his claim would still fail to the extent it is predicated on his October 17, 2016 termination because Atlantic Ro-Ro had a legitimate, non-discriminatory reason for terminating him on that date.[14]  Once a plaintiff demonstrates a *prima facie* age discrimination case, the defendant has the burden "to articulate a 'legitimate, non-discriminatory reason' for its employment decision." Steger v. Gen. Elec. Co., 318 F.3d 1066, 1074 (11th Cir. 2003) (quoting O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311 (1996)).  The burden is one of production, not persuasion, and therefore an employer "need only produce evidence that could allow a rational fact finder to conclude that [plaintiff's] discharge was not made for a discriminatory reason." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998).  It also involves "no credibility determination." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769 (11th Cir. 2005) (per curiam).

Neither party disputes that the PGC warned Plaintiff during his grievance hearing that he could bring cushions to place in each shuttle van or place cushioning inside his clothing, but he could not shirk work by waiting for a specific shuttle van.  (Doc. 69-2, p. 5.)  He was again told that delaying work by waiting for a specific van would result in termination on August 16, 2016. (Id. at p. 6.)  Plaintiff admits that on October 17, 2016 he was waiting for a specific van despite these warnings.  (Doc. 78-1, p. 28.)  Atlantic Ro-Ro thus meets its "exceedingly light" burden to articulate a legitimate, non-discriminatory explanation by explaining that it terminated Plaintiff on October 17 because he was shirking work.  Turnes v. AmSouth Bank, NA, 36 F.3d 1057, 1060– 61 (11th Cir. 1994) (quoting Meeks v. Comput. Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994));

---

[14] It is within a district court's authority to grant summary judgment as to an issue within a plaintiff's claim. See Barker v. Norman, 651 F.2d 1107, 1123 (5th Cir. Unit A July 30, 1981) ("[S]ummary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties but not as to others . . . ."); see also Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting the decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, as binding precedent of the Eleventh Circuit).

see, e.g., Phillips v. Aaron Rents, Inc., 262 F. App'x 202, 205–10 (11th Cir. 2008) (per curiam) (tardiness constitutes a legitimate, non-discriminatory reason for termination).

Once an employer offers a legitimate, non-discriminatory reason, the burden shifts to the plaintiff to show that this suggested reason is merely a pretext for unlawful age discrimination. Chapman, 229 F.3d at 1024–25. The plaintiff may do this by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation omitted). Importantly, a plaintiff cannot "simply quarrel[] with the wisdom of [the employer's] reason" but "must meet that reason head on and rebut it . . . ." Chapman, 229 F.3d at 1030. In other words, summary judgment is appropriate in a discrimination case where the plaintiff fails to "set[] forth specific facts showing" a genuine issue exists as to whether the employer's articulated reason is pretextual. Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987). Plaintiff has failed to carry that burden here.

Plaintiff's Response fails to set forth any "specific facts" showing that Atlantic Ro-Ro's reason for terminating him October 17, 2016 was pretextual.[15] In fact, Plaintiff concedes that waiting for a specific van with his cushion in it would make him less productive. (Doc. 78-1, p. 24.) Despite multiple warnings that he would be terminated if he waited for a specific van with his cushion, Plaintiff continued to do so. Thus, even assuming that Plaintiff did in fact establish a *prima facie* case of age discrimination, summary judgment is still appropriate for Plaintiff's claim to the extent it is based on his October 17 termination because Atlantic Ro-Ro has offered a

---

[15] Plaintiff's Response Brief does state that he "was told on multiple occasions by other workers that he should retire." (Doc. 73, p. 6.) Like every factual assertion in Plaintiff's brief, there is no citation to the record to support this statement. Review of the record reveals no evidence showing that anyone from Atlantic Ro-Ro told Plaintiff that he should retire. The Court will thus disregard this statement.

legitimate, non-discriminatory reason for its action against Plaintiff and there is no evidence of pretext. For all the reasons set forth above, the Court thus **GRANTS** Atlantic Ro-Ro's Summary Judgment Motion as to Plaintiff's ADEA discrimination claim against it. (Doc. 71.)

  **C.**  **Plaintiff's Claim against the Union**

  After reviewing the record and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff is also unable to establish a *prima facie* case of age discrimination against the Union. The Union does not dispute that Plaintiff is a member of a protected age group or that he was qualified to do the job. However, the Union argues that Plaintiff fails to establish that it took adverse action against him.[16] (Doc. 69-1, pp. 14–16.) In addition, like Atlantic Ro-Ro, the Union asserts that Plaintiff avoided work by waiting for a specific van with his cushion and that this was a legitimate and non-discriminatory reason for its action. (Doc. 69-1, pp. 18–19.)

  An adverse employment action under the ADEA is "a serious and material change in the terms, conditions, or privileges of employment." Coles v. Post Master Gen. United States Postal Servs., 711 F. App'x 890, 895 (11th Cir. 2017) (per curiam) (citing Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1193–94 (11th Cir. 2016)). To establish this element, a plaintiff must show that "the employer's action . . . impact[ed] the . . . the plaintiff's job in a real and demonstrable way." Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001) *abrogated on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). In addition, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances" not just from the employee's subjective perspective. Id. Stated another way, "a

---

[16] The Union also argues that Plaintiff cannot establish a valid comparator to show that he was treated less favorably than someone outside of his protected class. (Doc. 69-1, p. 16.) Because the Court finds that summary judgment is warranted on two other grounds, it declines to reach this issue.

'bruised ego' is simply not enough to constitute an adverse employment action." <u>Mitchell v. Vanderbilt Univ.</u>, 389 F.3d 177, 182 (6th Cir. 2004) (citation omitted).

In this case, Plaintiff does not dispute that Defendant Atlantic Ro-Ro—not the Union—terminated his employment on April 9, 2016 and October 17, 2016.  (Doc. 69-2, pp. 4, 6; doc. 78-1, pp. 28, 46.)  This leaves only the August 16, 2016 incident where two Union officials allegedly used abusive language and threatened to fire Plaintiff but did not do so.  (Doc. 69-2, p. 6.)  The Union argues that just threatening to fire someone does not constitute an adverse employment action.  (Doc. 69-1, p. 15.)  Plaintiff does not respond to this argument.  However, several circuit courts have found that threats and even unfair reprimands are not enough to establish the adverse employment action element of an ADEA claim. <u>See, e.g.</u>, <u>Mitchell</u>, 389 F.3d at 182 ("[Defendant's] proposals to reduce [plaintiff's] pay, alter his employment status, and reassign him . . . were never implemented and therefore not adverse employment actions."); <u>Welsh v. Fort Bend Indep. Sch. Dist.</u>, 941 F.3d 818, 826 (5th Cir. 2019) ("This court has previously held that 'allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions . . . .'") (quoting <u>King v. Louisiana</u>, 294 F. App'x 77, 85 (5th Cir. 2008)).  Because Plaintiff is unable to show that the Union did anything beyond threaten to fire him in an unpleasant fashion, his *prima facie* ADEA claim against the Union fails.

Even if Plaintiff could establish a *prima facie* case of age discrimination, his claim would still fail because the Union had a legitimate, non-discriminatory reason for its action.  Like Atlantic Ro-Ro, the Union states that Plaintiff shirked work.  (Doc. 69-1, pp. 18–19.)  Plaintiff does not rebut this reason, and the Court finds—for the same reasons that it found for Atlantic Ro-Ro—that the Union's proffered explanation satisfies its burden of showing that it acted for a legitimate, non-

discriminatory reason. Therefore, the Court **GRANTS** the Union's Motion for Summary Judgment as to Plaintiff's ADEA claim against it. (Doc. 69.)

## III. Additional Grounds for Denying Plaintiff's Claims Against GSA

GSA alternatively argues that it cannot be held liable under the ADA or ADEA because it does not meet either Act's definition of an employer or labor organization. (Doc. 71-15, pp. 18–19.) To qualify as an employer under the ADA, an entity must employ at least twenty people. 29 U.S.C. § 630(b). Likewise under the ADEA, an entity is only considered an employer if it "has fifteen or more employees for each working day . . . ." 42 U.S.C. § 2000e(b). Here, it is undisputed that GSA only employs four people. (Doc. 17, p. 18.) Plaintiff's only response to this definitional shortcoming is to offer a "W-2" form, which he says is proof that GSA paid him. (Doc. 73-3, p. 6.) Even assuming the form proves that GSA paid Plaintiff, it is irrelevant because GSA still does not employ the minimum number of employees to be considered an employer under either the ADA or ADEA.

In an effort to maintain his suit against GSA, Plaintiff also argues that GSA is a labor organization. (Doc. 73, p. 8.) The ADA and ADEA share the same definition of labor organization. 42 U.S.C. § 2000e(d); 29 U.S.C. § 630(d). Under either Act, a labor organization must "engage[] in an industry affecting commerce . . . ." Id. This requires "maintain[ing] or operat[ing] a hiring hall or hiring office which procures employees for an employer or procures for employees opportunities to work for an employer . . . ." 29 U.S.C. § 630(e); 42 U.S.C. § 2000e(e). An entity can also engage in an industry affecting commerce under the ADEA by having fifty or more members before July 1, 1968 or twenty-five or more members after July 1, 1968 and meeting other specifications. 29 U.S.C. § 630(e). For the ADA, the organization must have twenty-five members "during the first year after March 24, 1972" or fifteen or more after that and

it must meet other specifications. 42 U.S.C. § 2000e(e). Neither party disputes that the Union, not GSA, operates the hiring hall where the Port Employers hire longshoremen. (Doc. 71-16, p. 2; doc. 69-2, pp. 2–3.) In addition, the record indicates that only the Port Employers were members of GSA which places it below either Act's membership threshold. (Doc. 17, p. 18.) Thus, GSA does not meet the statutory requirements to be considered a labor organization under either the ADA or ADEA.

Plaintiff also cites <u>Mason v. Stallings</u>, 82 F.3d 1007 (11th Cir. 1996), to support his argument that GSA should be considered an employer or a labor organization. (Doc. 73, p. 8.) However, reliance on this case is misplaced as <u>Mason</u> holds only that there is no individual liability under the ADA. <u>Mason</u>, 82 F.3d at 1009. Plaintiff also appears to argue that GSA is an agent of the Port Employers. (Doc. 73, p. 8.) The record, however, indicates that GSA could only represent the Port Employers in unemployment insurance matters. (Doc. 17, p. 18.) Nonetheless, even if GSA was the Port Employers' agent, this would still not establish its liability. The Eleventh Circuit has interpreted the "agent" language in the ADA and ADEA as merely "ensur[ing] *respondeat superior* liability of the employer for the acts of its agents" and not to create liability for the individual agent. <u>Mason</u>, 82 F.3d at 1009. Thus, for the above reasons, the Court **GRANTS** GSA's Motion for Summary Judgment on both the ADEA and the ADA claims on the alternative ground that it is does not qualify as an employer or labor organization under either statute. (Doc. 71.)

## IV.    Punitive Damages

Plaintiff also claims entitlement to punitive damages. (Doc. 5, p. 6.) Under the ADA, punitive damages are limited "to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected

rights of an aggrieved individual.'" Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 529–30 (1999) (quoting 42 U.S.C. § 1981a(b)(1)); see also 42 U.S.C. § 12117(a) (Title VII remedies and procedures apply to ADA plaintiffs).[17] For the reasons discussed above, Plaintiff's claims alleging disability discrimination fail as a matter of law. Thus, Plaintiff cannot show that any of the Defendants engaged in intentional discrimination and therefore cannot show he is entitled to punitive damages. Accordingly, the Court **GRANTS** Defendants' Motions for Summary Judgment as to this claim. (Docs. 69, 71.)

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant International Longshoremen's Association, Local 1423's Motion for Summary Judgment, (doc. 69), and Defendants Atlantic Ro-Ro Stevedoring, Inc., APS Stevedoring, LLC, Marine Terminals Corporation-East, and the Georgia Stevedore Association, Inc.'s Motion for Summary Judgment, (doc. 71). The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendants and to **CLOSE** this case.

**SO ORDERED**, this 12th day of February, 2020.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[17] The ADEA does not provide for punitive damages. Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1446 (11th Cir. 1985) (citing Dean v. Am. Sec. Ins. Co., 559 F.2d 1036, 1038 (5th Cir. 1977)).